UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

**CA'NON JONES, individually, and on behalf of others similarly situated,**

      Plaintiff,

      Hon.

**COLLECTIVE/CLASS ACTION COMPLAINT AND JURY DEMAND**

v.

**PSCU INCORPORATED, a Florida corporation,**

      Defendant.

_____

## COLLECTIVE/CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff, CA'NON JONES, individually and on behalf of all others similarly situated, by and through his attorneys, hereby brings this Collective/Class Action Complaint against Defendant, PSCU Incorporated, and states as follows:

## INTRODUCTION

1.    This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, CA'NON JONES (hereinafter referred to as "Plaintiff"), individually and on behalf of all similarly situated persons employed by Defendant, PSCU INCORPORATED (hereinafter collectively referred to as "PSCU" or "Defendant"), arising from Defendant's willful violations

of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*

2.   Plaintiff is a former customer service representative who worked for Defendant on an hourly basis at its Allen Park, Michigan call center in the card services division of PCSU.

3.   Defendant provides financial services to credit unions including operating four call centers in the United States.

4.   PSCU is a Credit Union Service Organization (CUSO) that was formed by credit unions to provide services to credit unions.   See https://pscu.com/about/our-difference.html (last accessed April 15, 2016).

5.   According to PSCU's website, it touts innovation, excellence, trust, passion and leadership as core business values.   See https://pscu.com/about/mission-values.html (last accessed April 15, 2016).

6.   According to a recent press release, PSCU serves more than 1,500 financial institutions nationwide and the company is owed by nearly 800 member credit unions representing 16 million credit, debit, prepaid, online bill payment, mobile and electronic banking accounts.   See https://pscu.com/media/press-room/06302014.html (last accessed April 15, 2016).

7.   Upon information and belief, PSCU operates three "contact center" locations (i.e., call centers) throughout the country, including at its headquarters located in St. Petersburg, Florida; its Western Service Center, located in Phoenix

Arizona; and its Northern Service Center, located in Allen Park, Michigan.  See

https://www.pscu.com/careers/locations.html (last accessed April 15, 2016).

8.     Collectively, these call centers handle more than 18 million inquiries

per year.  See  https://pscu.com/media/press-room/06302014.html (last accessed

January 9, 2016).

9.     The majority of PSCU's call center employees receive and respond to

customer calls on behalf of its member credit unions' clients. These customer

service employees are hourly, non-overtime exempt employees.

10.    Defendant requires its customer service representative employees

(hereinafter referred to as "customer service representatives"), to work a set

schedule.

11.    Defendant does not compensate its customer service representatives

for all work performed.  Often times, Defendant would not begin paying its

customer service representatives until they completed a lengthy login and boot-up

process on their computers.  For instance, Defendant pays Plaintiff for only 5

minutes of a boot-up and login process that often takes 10 minutes to complete.

12.    Defendant's policies and practices resulted in customer service

representatives like Plaintiff not being paid for all time worked and for all of their

overtime pay due in violation of the FLSA and resulting in unjust enrichment for

PSCU.

13.     Defendant's customer service representatives use multiple computer programs, software programs, servers and applications, in the course of performing their responsibilities.  These programs, servers and applications, are an integral and important part of their work as they cannot perform their job without utilizing them.

14.     Defendant's customer service representatives perform the same basic job duties and are required to use the same computer programs, software programs, servers and applications.

15.     Defendant's customer service representative jobs are non-exempt positions that typically pay a few dollars more than the federally mandated minimum wage.

16.     The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's customer service representatives, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry.   One of those abuses, which is occurring in this case, is an employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday."  Fact Sheet #64 at p. 2 (a copy of which is attached as *Exhibit A*).

17.     Plaintiff is employed by Defendant as a former call center based customer service representative.  In order to perform his job, Plaintiff is required to

start-up and log-in to various, secure computer programs in order to access information and software. The start-up and log-in process took substantial time on a daily basis with said time ranging from 5 to 10 minutes per day.

18.    Plaintiff was only paid for 5 minutes of his startup time, no matter how long it actually took him to complete the process, wherein it often took him 10 minutes to be prepared to take calls.

19.    Defendant provided its customer service representatives with one unpaid 30-minute lunch break per shift.

20.    In order to deduct a 30-minute lunch break from an employees' compensable time, the employee must be completely relieved of his or her employment duties for the entire 30 minutes.  See 29 CFR § 785.19(a).

21.    However, Defendant does not provide its customer service representatives with a legitimately unpaid *bona fide* meal period because Defendant requires its customer service representatives to have their computer and phone systems up and running *before* the end of their 30-minute lunch break so they can immediately make/take calls; thus, the customer service representatives are required to return to their desks during their lunch breaks in order to commence the login process.

22.    Plaintiff was required to log-out at the end of each shift, which amounted to another couple minutes of unpaid time.

23.     Additionally, in contravention of the continuous workday doctrine, Defendant did not compensate Plaintiff for the time he took short restroom breaks throughout the day, which amounted to another 15-20 minutes of uncompensated time each day.

24.     Additionally, the off-the-clock time Plaintiff spent logging out of each session directly benefitted Defendant and this process was an essential part of Plaintiff's job responsibilities as a customer service representative.

25.     The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift and post-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." See *Exhibit A*, at p. 2.  Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*.

26.     Defendant knows or could have easily determined how long it takes for its customer service representatives to complete the preliminary start-up and log-in process and Defendant could have properly compensated Plaintiff and the Class for the preliminary start-up and log-in work they performed, but did not.

27.     Defendant also knows or could have easily determined or tracked how

long it takes for each customer service representative to complete the computer log-out process, and Defendant could have paid Plaintiff and the Class for this work they performed, but did not.

28.    Further, Defendant knew or could have easily provided Plaintiff and the Class with their full and uninterrupted 30-minute lunch breaks, but did not.

29.    On behalf of himself and hundreds or thousands of others similarly situated customer service representatives, Plaintiff seeks to recover the full measure of back-pay and damages.

30.    Plaintiff brings this action on behalf of himself and all other non-exempt, similarly situated hourly customer service representative employees of Defendant to obtain declaratory relief and recover unpaid wages and overtime, liquidated damages, penalties, fees and costs, pre- and post-judgment interest, and any other remedies to which they may be entitled.

## JURISDICTION AND VENUE

31.    This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

32.    Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State

court of competent jurisdiction."

33.     Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis.  Defendant's customer service representatives engage in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

34.     This Court has jurisdiction over Plaintiff's state law class claims pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). The aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and this is a case in which more than two-thirds of the proposed Class members and Defendant are citizens of different states.

35.     To establish a claim for unjust enrichment, Plaintiff must prove five elements: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) the absence of justification for the enrichment and the impoverishment; and (5) an absence of a remedy provide by law.

36.     Plaintiff's state claims originate from the same facts that form the basis of his federal claims. Therefore, the Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

37.     This court has personal jurisdiction over Defendant because it does

business within the State of Michigan and is registered with the Michigan Secretary of State.

38. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant operates a customer contact center in this district and employs call center employees who are putative class members in this district.

## PARTIES

39. Plaintiff is a resident of Redford, MI, who was employed by Defendant as an hourly customer service representative in Defendant's Allen Park within the last two years. Plaintiff signed a consent form to join this lawsuit, which is attached to this Complaint as *Exhibit B*.

40. Plaintiff's standard schedule was to work from 10:00 a.m. until 6:30 p.m., Monday through Thursday and Saturday, with a 30-minute lunch break, for a total of 40 hours. However, there were weeks where Plaintiff would work from 6:00 a.m. or 7:00 a.m. until 6:30 p.m., Monday through Thursday and Saturday, with a 30-minute lunch break, which resulted in him working more than 40 hours in a week.

41. For those weeks Plaintiff worked these extended hours he was not paid the full overtime shift premium to which he was due.

42. Plaintiff worked in the Cards Services division of PSCU.

43. Defendant PSCU Incorporated is a Florida corporation that is licensed

to do business in Michigan.

44.     PSCU operates three brick-and-mortar customer contact centers in the United States (Phoenix, Arizona; Allen Park, Michigan; and St. Petersburg, Florida).

45.     At all relevant times, Defendant employed Plaintiff, and all members of the putative Class, under the FLSA.

## GENERAL ALLEGATIONS

46.     Plaintiff worked as a customer service representative for Defendant from approximately August 10, 2015 until approximately November 12, 2015.

47.     Plaintiff was paid approximately $11.06 per hour plus additional shift differentials, as appropriate.

48.     Plaintiff often worked an average of 15-25 hours of overtime per week.

49.     In order to perform his job, Plaintiff was required to start-up and log-in to various, secure computer systems and servers in order to access the computer programs servers and applications that he required to do his job.

50.     The start-up and log-in process took substantial time on a daily basis with said time ranging from 5-10 min in the morning; an additional two minutes into his lunch period to finish his current call; returning from lunch 2-3 minutes early so that he could log-in and be prepared to take calls upon the expiration of his

lunch break; and he would take approximately 15-20 minutes worth of unpaid bathroom breaks each day, on average.   This amounts to approximately 23-33 minutes of unpaid time each day which should have been paid at his overtime rate.

51.   Plaintiff was not actually "clocked-in" for his shift until *after* the computer start-up and log-in process was complete and he logged into the applicable programs, software, servers and applications, meaning that Plaintiff and all other Class members worked for many minutes during the start-up process each shift for which they were never compensated.

52.   This off-the-clock time Plaintiff spent starting-up and logging into each session directly benefitted Defendant and this process was an essential part of Plaintiff's job responsibilities as customer service representative.

53.   When logging-in during the start of his shift, Plaintiff would first sign into the hard phone. Next, he would log into his computer, log into Call Pro, log into Knowledge Space (which contained information needed to answer customer calls); log into Total View (for scheduling); and log into MS Office.

54.   This off-the-clock time Plaintiff and all putative Class members spent logging-out of each session directly benefited Defendant and this process was an essential part of Plaintiff's job responsibilities as a customer service representative.

55.   At all relevant times, Defendant was Plaintiff's "employer" and Defendant directed and directly benefited from this work, including the

preliminary start-up and log-in time, lunch-break time, and postliminary log-out activities Plaintiff performed.

56.    At all relevant times, Defendant controlled Plaintiff's work schedules, duties, protocols, applications, assignments and employment conditions.

57.    At all relevant times, Defendant was able to track the amount of time that Plaintiff spent starting-up, logging into, and logging out of Defendant's computer systems.  However, Defendant failed to document, track or pay Plaintiff for the preliminary, lunch-break, and postliminary work that they performed in connection with each shift.

58.    At all relevant times, Plaintiff was a non-exempt hourly employee, subject to the requirements of the FLSA.

59.    At all relevant times, Defendant used its adherence and attendance policies against Plaintiff for their preliminary, lunch-break, and postliminary time worked and failed to pay for that time.

60.    At all relevant times, Defendant's policies and practices deprived Plaintiff of wages owed for the preliminary, lunch-break time, and postliminary activities Plaintiff performed.  Because Plaintiff typically worked 40 hours or more in a workweek, Defendant's policies and practices also deprived Plaintiff of overtime pay at a rate of 1.5 times his regular rate of pay.

61.    Defendant is a leader in the field of call center services and knew or

should have known that Plaintiff and other customer service representative employees' time spent starting up, logging in to, dealing with connectivity issues, on their lunch-break, and logging out of Defendant's computer systems is compensable under the FLSA.

## 29 U.S.C. § 216(b) COLLECTIVE ACTION ALLEGATIONS

62.   Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on his own behalf and on behalf of:

> *All similarly situated current and former hourly call center based customer service representatives who worked for Defendant at any time during the last three years.*

(Hereinafter referred to as the "Class").  Plaintiff reserves the right to amend this definition if necessary.

63.   Excluded from the Class are all Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

64.   With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b).  The class of employees on behalf of whom Plaintiff bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan;

and (c) their claims are based upon the same factual and legal theories.

65.     The employment relationships between Defendant and every Class member is the same and differs only name, location, and rate of pay.  The key issues—i.e., the amount of uncompensated preliminary start-up and log-in time, time associated with logging into the hard phone, their computers, Call Pro, Knowledge Space, Total View and MS Office—do not vary substantially from Class member to Class member.

66.     The key legal issues are also the same for every Class member, to wit: whether time worked during meal breaks, unpaid bathroom breaks, start-up time and time spent shutting down are compensable under the FLSA.

67.     Plaintiff estimates that the Class, including both current and former employees over the relevant period, will include several hundred, if not several thousand members.  The precise number of Class members should be readily available from a review of Defendant's personnel and payroll records.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

68.     Plaintiff brings this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on his own behalf and on behalf of:

> *All similarly situated current and former hourly call center based customer service representatives who worked for Defendant at any time during the last three years.*

(Hereinafter referred to as the "Rule 23 Nationwide Class").  Plaintiff reserves the

right to amend this definition if necessary.

69.     The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical.  Plaintiff reasonably estimates that there are hundreds of Rule 23 Nationwide Class members.  Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

70.     There is a well-defined community of interest among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class.  These common legal and factual questions, include, but are not limited to, the following:

   a.  Whether the preliminary time Rule 23 Nationwide Class members spend on start-up and log- in activities each session is compensable time;

   b.  Whether the time Rule 23 Nationwide Class members spend on boot-up and login activities during their lunch break is compensable time;

   c.  Whether the postliminary time Rule 23 Nationwide Class members spend on log-out activities is compensable time;

   d.  Whether the time Rule 23 Nationwide Class members spent taking short bathroom breaks during the day is compensable time;

   e.  Whether Rule 23 Nationwide Class members are owed wages (above the federally mandated minimum wage and overtime due

under the FLSA) for time spent performing preliminary, or postliminary activities, and if so, the appropriate amount thereof;

f.  Whether Defendant's non-payment of wages amount to a breach of contract; and

g.  Whether Defendant's non-payment of wages amount to unjust enrichment.

71.   Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that he and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.  Plaintiff's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and his legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

72.   Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and he has retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

73.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual

along with the fear of reprisal by their employer.  Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

74.     This case will be manageable as a Rule 23 Class action. Plaintiff and his counsel know of no unusual difficulties in this case and Defendant and its corporate clients all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

75.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

76.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I - 29 U.S.C. § 216(b) Collective Action

## **VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME**

77.     Plaintiff re-allege and incorporates all previous paragraphs herein and

further allege as follows.

78.    Defendant is engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

79.    At all times relevant to this action, Plaintiff was an "employee" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

80.    Plaintiff either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

81.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

82.    At all times relevant to this action, Defendant required Plaintiff and all similarly situated current and former Class members to perform preliminary computer start-up and log-in work per session, but failed to pay these employees the federally mandated overtime compensation for all services performed.

83.    At all times relevant to this action, Defendant required Plaintiff and all similarly situated current and former Class members to log into the hard phone, Call Pro, Knowledge Space, Total View and MS Office, but failed to pay these employees the federally mandated overtime compensation for all services performed.

84.     At all times relevant to this action, Defendant required Plaintiff and all similarly situated current and former Class members to perform work during their unpaid 30-minute lunch break, but failed to pay these employees the federally mandated overtime compensation for any of the services performed.  As a result, Defendant owes Plaintiff and the Class wages for the full 30 minutes of those lunch breaks.

85.     The preliminary, lunch-break and postliminary off-the-clock work performed by Plaintiff and all similarly situated Class members every session is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

86.     In workweeks where Plaintiff and other Class members worked 40 hours or more, the uncompensated preliminary start-up and log-in time, the uncompensated and lunch-break time, and the uncompensated postliminary log-out time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage.  29 U.S.C. § 207.

87.     Plaintiff and other Class members, by virtue of their job duties and activities actually performed, are all non-exempt employees.

88.     Defendant's violations of the FLSA were knowing and willful. Defendant knows or could have determined how long it takes for customer service representatives to complete the preliminary start-up and log-in process, how long

the employees worked in connection with the hard phone, Call Pro, Knowledge Space, Total View and MS Office programs, the amount of unpaid lunch-break time work the employees were performing and how long it took to log-out after a customer service representative's shift, and it could have properly compensated Plaintiff and the Class for these preliminary, lunch break, and postliminary activities, but did not.

89.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## Count II - (Rule 23 Nationwide Class Action)

## BREACH OF CONTRACT

99.    Plaintiff re-allege and incorporate all previous paragraphs herein and further allege as follows.

100.   At all times relevant to this action, Defendant had a contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate.

101.   Each Rule 23 Nationwide Class member's contractual hourly rate is identified in paystubs and other records that Defendant prepares as part of its regular business activities.

102.   Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, have an hourly rate between $8.00 and $15.00 per hour.

103.   Plaintiff and every other Rule 23 Nationwide Class member performed under the contract by doing their jobs and carrying out the preliminary, lunch-break and postliminary activities that Defendant required or accepted.

104.   By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the preliminary start-up and log-in activities performed each session, the work performed in connection with the hard phone, Call Pro, Knowledge Space, Total View and MS Office, for time spent on their lunch-breaks, unpaid bathroom breaks and the postliminary log-out activities performed at the end of each shift, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

105.   Plaintiff's and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week (i.e., pure "gap time" claims).

108.   Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Nationwide Class members spent doing preliminary, lunch-break and postliminary activities, which is a fundamental part of an "employer's job."

109.   The contract and contractual obligations in question are not employment contracts in that they do not relate to or guarantee that any services will be performed in the future.

110.   As a direct and proximate result of Defendant's breaches of the contracts alleged herein, Plaintiff and every other member of the Rule 23 Nationwide Class has been damaged, in an amount to be determined at trial.

111.   These claims are appropriate for nationwide class certification under Rules 23(b)(2) and (b)(3) because the law of contracts is substantially the same throughout the United States.

### COUNT III - (Rule 23 Nationwide Class Action)

### <u>UNJUST ENRICHMENT</u>

112.   Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

113.   Defendant has been enriched by requiring Plaintiff and all similarly situated current and former class members to perform uncompensated preliminary computer start-up and log-in time per session; uncompensated time for logging in and out of their hard phones, Call Pro, Knowledge Space, Total View and MS Office; but having failed to pay these employees the federally mandated minimum wage and/or overtime compensation for any of the services performed.

114.   Plaintiff and all similarly situated current and former class members

have suffered an impoverishment by the aforementioned conduct and by Defendant having failed to pay these employees the federally mandated minimum wage and/or overtime compensation for any of the services performed.

115. There exists the requisite connection between the enrichment of Defendant for its systematic failure to pay Plaintiff and all similarly situated current and former class members the federally mandated minimum wage and/or overtime compensation for the hours they worked and the impoverishment of Plaintiff and all similarly situated current and former class members because the money Defendant saved by failing to pay them for all the time worked at their appropriate overtime rates belongs to—and would otherwise be paid to—Plaintiff and the similarly situated current and former class members

116. There exists no valid justification for Defendant to wrongfully and illegally fail to pay Plaintiff and the similarly situated current and former class members for all hours worked at their appropriate overtime rates.

117. To the extent that Plaintiff's and all similarly situated current and former class members' FLSA and/or Breach of Contract claim does not provide them with all the money owed for unpaid overtime, then but for their claim of unjust enrichment, there would be an absence of a remedy provided by law.

118. Plaintiff and all similarly situated current and former class members had a clear expectation of payment at their proper overtime rates for the work they

performed for Defendant.

119.   Because the failure to Plaintiff and all similarly situated current and former class members is attribute to a common corporate policy of Defendant this is an appropriate claim for class adjudication and does not require individualized proof.

## RELIEF REQUESTED

WHEREFORE, Plaintiff requests the following relief:

a.   Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.   Certifying this action as a class action (for the Rule 23 nationwide class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract claim (Count II);

c.   Certifying this action as a class action (for the Rule 23 nationwide class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's nationwide claim for unjust enrichment (Count III);

d.   Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action Class members and Rule 23 Class members, and permitting Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

e.   Designating Plaintiff as the representative of the FLSA collective action Class and the Rule 23 Nationwide Classes and undersigned counsel as Class counsel for the same;

f.   Declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

g.   Declaring Defendant's violation of the FLSA was willful;

h.   Declaring Defendant breached its contract with Plaintiff and the members of the Rule 23 Nationwide Classes by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

i.   Granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff and the collective action Class, the Rule 23 Nationwide Classes, the full amount of damages and liquidated damages available by law;

j.   Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

k.   Awarding pre- and post-judgment interest to Plaintiff on these damages; and

l.   Awarding such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiff, CA'NON JONES, individually and on behalf of all others similarly situated, by and through his attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

Dated:  April 18, 2016

> */s/Neil B. Pioch*
> Neil B. Pioch (P67677)
> SOMMERS SCHWARTZ, P.C.
> One Towne Square, Suite 1700
> Southfield, Michigan 48076
> Telephone: (248) 746-4044
> Facsimile: (248) 746-4001
> npioch@sommerspc.com